doesn't come with a penny right now okay next up is Smith versus City of Atlantic City take your time all right counselor ready are you going to be are you going to be reserving any time yes your honor I'd like to reserve three minutes that's granted and you can proceed whenever you're comfortable thank you good morning your honors may it please the court this is Kayla Tony on behalf of plaintiff Alexander Smith with me at council table is Becky Demmerman from First Liberty Institute in graph V to joy the Supreme Court unanimously restored title sevens protections for people of faith by requiring employers to grant religious accommodations the only way they can avoid this duty is to show substantial increased cost to the operation of the business but the district court below denied that protection to pastor Alex Smith who's worked for the safety of his community for the past 20 years under graph it's the department's burden to show undue hardship and they haven't done so they haven't quantified any costs from accommodating mr. Smith the department also failed to offer alternative accommodations especially since mr. Smith's position does not require him to wear a mask or it's to engage in I guess your your your friend across the aisle says something a little bit different that there there could and she has once at least been enough a chance where it was sort of all hands on deck and everybody needed to be possibly firefighting your honor that is a key disputed fact in this case which calls for a remand it is a genuine issue of material fact and this court can only affirm if there are no genuine issues I mean he does not want to be a civilian he's a firefighter as a matter of firefighter shouldn't you be able to suppress fire your honor his position used to involve fire suppression every day but his position is firefighter now he has a role of air mask technician but his he's not a civilian correct and he does not want to be a civilian it's correct that he's not a civilian your honor his role is air mask technician and as a firefighter he's being paid as a firefighter not as a civilian it was a promotion to the role of air mask technician so he's paid as a firefighter not as a civilian your honor regardless of the label that the department uses or that is that right or not as a matter of fact his job is not to engage in fire suppression he is not paid as a firefighter is that right as a matter of fact it is not your honor he's being paid as an air mask technician which is a higher level what is a civilian is paid he's not listed as a civilian on the organizational chart and I think the organizational chart is actually helpful here in the record your honor because it shows that his role is an administrative one his label is a firefighter on the organizational chart but his role is an administrative one and the department's long-standing practices as a firefighter is an air mask technician and he's being paid as a firefighter not as a civilian that's correct and his job is primarily done at the fire shop which is an administrative role his job is to fit test other other colleagues who do engage in fire suppression and his job when he is called to the scene of a fire is to stay with the air unit outside of the hot zone that's immediately dangerous to life and health that's very important that he stays outside of that zone so that his colleagues who are fighting the fire can come to him and refill their air bottles readjust their air masks safely and so it's very important that he stays away from the structure fire when he's there at the scene and that is for the safety of his colleagues and that's why in his eight years as an air mask technician he is not needed to wear an SCBA mask and that's also why the previous air mask technician filed two affidavits in this case in the record at 676 and 278 where he testified that no previous air mask technician for the past 37 years had ever needed to wear an SCBA mask and that's because fire suppression just isn't part of their role their role is to keep their colleagues safe by really refilling those air bottles and here the department has not met its burden under Graf Vida Joy to show that accommodating Mr. Smith would actually result in any increased costs but if the force is as I understand it 189 firefighters even one firefighters accommodation wouldn't that be a substantially substantial increased cost as discussed in Graf? Your honor I will note that the force has recently expanded to 196 firefighters most of whom are fully trained to engage in fire suppression but there's only one. Don't we evaluate this at the time of what was what at the time the decision was made? I mean whatever the present resources are I mean but that's nice that they have more resources but I mean that that's not part of the record here and that's not part of the decision-making at the time and aren't we reviewing the decision at the time it was made? Yes your honor and if you look to the expert testimony at the time the decision was made on that point it's very significant that at the scene of a fire Mr. Smith is the only one who's trained to safely operate the air unit and so it would not be a hardship for the department to accommodate his beard request because he doesn't need to wear an SCBA mask. The record reflected that you have to be certified to fix the air masks you have to be certified to do the testing but that anyone could fill the bottles that's that's what I read in the record. Your honor that's another dispute effect the chief did testify something to that effect at deposition but that's very different from Mr. Smith's long-standing experience and deposition testimony as well as expert Krause's deposition testimony. So is it also a disputed fact that other people had been trained to fill the bottles? No your honor there are a few others who know how but they are not specifically called to the scene of the fire for that role and what expert Krause testified is that the mission it's very important to accomplish the mission of safely fighting the fire that each person stick with the role that they've been trained for and that they've been assigned to and that's the department's long-standing practice for the past 37 years is that the air mask technician stays with the rig he stays with the airing unit to make sure that those men and women can get the clean air they need and that's what Smith Mr. Smith has been committed to all these years. Can I ask you there was some testimony in the record that the state czar I guess who was overseeing the fire department at the time had pressured the chief to civilianize this role can you speak to whether or not you're so let's let's just assume that he doesn't need to actually suppress fire can you speak to what skills being a firefighter like what that experience is and how it's necessary for that role or is the only difference between a civilian AMT and a firefighter AMT suppression of fire do you do and I know that was like a little bit long of a question do you understand what I mean I mean if you remove fire suppression is the AMT essentially a civilian or is there some aspect of AMT work that necessitates the prior years of experience as a fire suppressor that's a great question your but it's not something that you all need to decide today if you have an answer to it I believe that mr. Smith's previous experience as a firefighter is certainly helpful to his role but his role no longer involves fire suppression so he could do his current role even if he had never fought fighters so it absolutely civilian role technically and that's actually one potential alternative accommodation that the department failed to consider the department completely failed to discuss alternative accommodations with mr. Smith and if it had it would have learned that he would have been comfortable with a quarter-inch beard where he could still safely wear an SCBA now would have been comfortable in a civilian role potentially your honor but that's not something he ever had the opportunity to discuss with the department and it's the department's burden under groff to raise and consider alternative accommodations it's not enough to simply reject one request and then move on they have to consider those alternatives and they never did and that's why they failed to meet their burden question Supreme Court abrogated our precedent that applying intermediate scrutiny to cases like this I'm thinking in particular of the Kennedy case yes your honor the the district court erred in applying the wrong standard to the free exercise claim strict scrutiny should apply here as you mentioned in Kennedy that was in the public employment context the court never considered intermediate scrutiny there simply applied strict scrutiny to find for mr. Kennedy and actually if you read this court's own precedents back in fraternal order and then tenify and then Blackhawk in Blackhawk then judge Alito made very clear that strict scrutiny was what he applied in fraternal order of police the only reason he used the term heightened scrutiny was that the city in that situation failed at any level of scrutiny and so that's why he chose that term but he clarified in Blackhawk that it was in fact strict scrutiny and strict scrutiny applies here for several reasons first we have a system of individualized exemptions where mr. Smith and others have requested exemptions and the department has considered them they've evaluated the underlying reasons for the exemptions which is something that look to me and tenify both mentioned and as part of that evaluation there's some discretion over whether to grant that the exemptions are what the the captain can make an exception if he wants he's responsible for whatever might happen but he can do it is that that's one yes your honor there's authority to deviate is what else is there the sideburn the sideburn five o'clock shadow is that another I mean just go through what are the exceptions that we're supposed to consider yes your honor so as you mentioned quote authority to deviate from the grooming procedure and quote is written into the policy at page 73 and then the emergency callback exception is also written into the policy and that is where at the scene of a fire in the rare event that more staff are needed which happens roughly once a year and mr. Smith's 15 years of experience off-duty firefighters are allowed to grow beards when they're off duty and when they're called in the commander or the captain who's at the at the scene has the discretion in that moment to evaluate whether he thinks the firefighter has more than a five o'clock shadow and if they do and he's worried about the mask fit he'll send them home or he'll send them off to shave and if he thinks it's just a five o'clock shadow and it won't interfere with the mask fit which you can safely wear a mask with up to a quarter inch of facial hair then he allows them to go ahead and fight the fire and so that policy on its face it's a categorical exemption and under mr. Smith is allowed to grow his beard off-duty and he's allowed to show up in an emergency callback with whatever growth he had and it would be evaluated the same as anyone else correct your honor but under the Supreme Court's precedent in Tandon v Newsom the relative standard of comparison is the level of risk that the department is tolerating and so if you look at the emergency callback exception the level of risk they're tolerating is that someone might need to fight a fire with a five o'clock shadow and they can do that because the way the masks work is that no toxins will flow into a person's lungs the testimony seemed to be that to the extent that number five the clean shave and rule and with that exception does not conflict with number six so maybe I have some some hair that's just at the surface and about to or just emerged but does not qualify as stubble interfering with the seal under six then that's not a violation of six and that person can proceed but if the testimony seems to be there is in fact never an exemption to facial hair that interferes in violation of number six two quick points on that your honor under Fulton B City of Philadelphia it's the discretion that the decision-maker has in that moment to decide just how much facial hair is present and whether it might interfere with the seal that triggers strict scrutiny and the other way it does is that there's that system of potential exemptions even if none are granted in Fulton no exemptions were ever granted to the city's non-discrimination policy but the court still applies rating number five and number six I don't think that there's anything in the record that shows that there has ever been an exception to number six can you point to evidence in the record that there in fact has been a time where someone could wear was permitted to suppress fire with an SCBA with stubble that prohibited the seal I mean interfered with the seal your honor that is another key disputed fact that calls for a remand it's unclear from the record our understanding is that some firefighters have fought fires with short beards in that emergency call that's your understanding that we're in the record is is there anything that reflects that your honor I would point to the testimony from from mr. Smith at page 305 he says we can respond to the scene of the fire without being clean shaven and then Evans declaration at 285 says that the exemption is designed to prevent firefighters from taking extra time to shave before reporting to the fire and then at page 330 he says that the supervisor makes an assessment when a person shows up on the scene what's and so let's say the record unambiguously showed that no one has ever gotten the advantage of that exception would it matter under Fulton it would not your honor because under Fulton no exemptions had ever been granted what mattered was that there was the discretion present for that government decision-maker which allowed him in the moment to evaluate the reasons for the person's request and that's what gets you under strict scrutiny under the free exercise clause can I ask you one last thing apparently you're appealing I think you're appealing denial of the of the preliminary injunction but you already appeal that and dismiss the appeal how do we reach that your honor because prejudice that was dismissed right no your honor I believe it was without prejudice I will confirm for rebuttal but I believe it was without because it was a voluntary dismissal and because we have a final judgment on the merits under Henry Westinghouse from this court's precedent from 1996 the preliminary injunction ruling merges with the final judgment so this court does have authority to review both decisions and there's actually several examples including in Tenafly where this court reversed despite finding it only reasonably likely to show that the defendant violated the free exercise clause so they didn't even have to reach a merits conclusion but that standard of reasonably likely or reasonable probability gives the court that authority to issue that to issue instructions for the preliminary injunction and that's very important to mrs. mr. Smith because then he doesn't have to continue to violate his conscience in order to keep his job which no American should have to do under our country's laws thank you you good morning may I please the court my name is Ruby Kumar Thompson I'm with the firm of Cleary Giacobbi Alfieri and Jacobs and we represent the city of Atlantic City your honors there is what this case is about as an accommodation that was requested to wear a three-inch beard and the claim that the firefighter suffered an adverse employment action and the adverse employment action that the firefighter says that he suffered is the failure to be accommodated in terms of a substantial increased cost Atlantic City submits that there are two substantially increased costs to granting this firefighter and accommodation the two costs are first the safety security and health of himself and the other firefighters should should the plaintiff be required to fight a fire the plaintiff is an air mask technician but he is a firefighter as well the essential duties of his job require him in a case of an emergency to have all hands on deck there only takes one emergency there's only one 9-11 for a firefighter to be able to be able to come and be ready to fight fires that is an essential requirement of his position disallowing a firefighter to wear a three-inch beard works of undue hardship on the Atlantic City Fire Department because it is a safety hazard to him and in addition the accommodation would run afoul of binding state and federal regulations I scratch my head over that one aren't you already not in compliance with the state with the state regulations we have never granted an exception to anyone where the hair would compromise or that a firefighter where the hair would compromise the seal of the mask the seal of the mask the risk is much greater with a longer beard than a five o'clock shadow if Smith weren't off-duty firefighter coming in for an emergency I'll ask you a question if you were coming in for an emergency would his facial hair be acceptable not at three inches but a five o'clock shadow that policy under number number five is generally applicable to Smith irrespective of anyone's religious or reasons for having that five o'clock shadow it is a rule and a policy of general applicability there is no exemptions for someone who's who's appears at a fire with a five o'clock shadow who isn't who's not religious or doesn't do it for religious reasons or just doesn't because he didn't have time to shave but as I understand the state regs don't allow for sort of an emergency callback exception the state regulations require that the facial hair not interfere with the seal of the mask there's sufficient scientific evidence and policy decisions from federal state safety regulations to indicate that the hair if it interferes with the math will not have a proper seal will be a health and safety hazard to any firefighter who is on the scene of a fire is the five o'clock shadow like I guess a shorthand for saying not long enough to interfere with a seal that's correct and can you address mr. Smith's point that he would have been willing to wear a quarter-inch beard and that a quarter-inch beard does not interfere with the seal is there anything in the record to contradict that a quarter-inch beard would not interfere with the seal so that's an interesting question because mr. Smith when he requested the accommodation had a three-inch beard he put in his affidavit and as well in his complaint that his religious beliefs require him to have a minimum of a three-inch beard when we talk about interactive process and accommodating someone with a religious belief we can't question that sincere religious belief so to say that that doesn't mean that the employer has to ask the employee to compromise their religion or their religious belief here it was a three-inch beard the accommodation is what is the accommodation that the employer can offer to accommodate that religious belief and here because of the safety regulations because of federal OSHA regulations there was no accommodation other than to exempt him so are you saying Groff does not require did not require us to ask about shorter beard length because based on his own asserted religious obligation that accommodation would have been futile correct can I restate regulation no matter how buttoned up it is with expert evidence and policy and so on trump the free exercise clause the regulation provides an impossibility in a sense the regulation the accommodations clause the free exercise clause doesn't require an employer to violate the law it just doesn't it's not a reasonable accommodation it's an undue hardship there's also fines isn't every free exercise a challenge to some the application of some law as being inconsistent with the free exercise clause sure if that was the claim that was made here but there wasn't a claim or a challenge to the law itself what we're talking about is the employers actions and the employers ability to accommodate a firefighter which doesn't exist unless the it's would be attention with the law a question on the state regulations you the record refers to a Patrick Bost BOST I'm unclear who that is or how what relation he has to the case it just I read his name but there was no sort of explanation as to who this is do you know who that is I don't you're on I'm sorry neither of us do that okay post Groff talking to your point about breaking a state regulation from what I can see there's one precedential First Circuit case that addresses this in a non-precedential second the precedential case talks about the record that reflected the serious penalties that could result from violating that such as like the hospital could lose its license here I really didn't see any evidence in the record about what the penalty would be for violating these Pioche or P whatever standards so if you can address whether or not there are there is any such record or if we can take judicial notice and also if you could speak to there's mr. Smith testified or said in his deposition that a CFD regularly violates a Pioche standard that an air truck be on scene at all times whereas at night a CFD does not call in an air truck due to overtime costs so if there it first of all is that a standard and are they regulating are they regularly flouting that and does that reflect that there are no penalties for violating a Pioche regulation no the panel there is a penalty there's a regulatory penalty under Pioche and the regular the Pioche can issue a written order either for the department to comply and then can also impose a $7,000 per day fine for each violation so long as it continues so whether or not there are others other requirements that are not being met means that they can be fined for that but that doesn't mean that it lends itself to be a reasonable combination for any violation of any that's correct it's a general penalty application in Pioche for the commissioner the other substantial non-economic cost is of course breaching the public's trust and perception that all safety regulations are being followed by the ACFD should there be a written order to comply of course we need public trust in our public servants who are there to provide safety and fire suppression the fact that miss that there's any argument that the plaintiff here does not need to suppress fires is is completely not availed by the record whatsoever it's absolutely his position his position to fight fires actually the Atlantic City Fire Department does not have a light duty position at all for anyone from medical exceptions or the like they would have to take a leave so if if someone is not capable of suppressing fire currently or at the of this record that means they were a civilian they were there were we have no civilian positions but there there are civilian positions in in fire departments for air technicians that can be trained just like a dispatcher can be a civilian position in a police department in this department all firefighters need to be ready and to either rescue another firefighter who may fall in it or our search and rescue civilians or suppress a fire in addition the air mass technician needs to be close enough to the fire in order that the firefighters can be can arrive and get air quickly correct so the fact that he's in the area and the wind shifts can change would require him to wear a mask the fact that he has it I'm not quite sure what the circumstances were at those fires but should there be a very large industrial fire there certainly could be toxic fumes in the air that he can't be that far away where he's not close enough to for the other firefighters to be safe and when you go there just so I understand so all every single employee of ACFD is a firefighter correct even the second air mass technician who did appear for that 2020 emergency in and and and perform firefighting functions let's say that the record shows that as long as mr. Smith was a air mass technician he didn't have to wear a mask and wasn't called into I'm sorry he didn't have to engage in firefighting and that as far back as 1987 neither did any other air mass technician is should that be relevant to us or not that's absolutely not relevant because it's the risk correct it's a risk of any situation even one loss of life would be unjustifiable in this circumstance and that's why those safety regulations exist and that's why when you have to be ready to fight those fires at all times even one instance would not be would not be acceptable and that's what we're doing we're trying to prevent incidents and the fact that it didn't happen before it doesn't mean that it can't happen in the future you heard us talk about with your friend about intermediate scrutiny and strict scrutiny why should the strict scrutiny not apply I'm sorry why shouldn't we use strict scrutiny Oh strict scrutiny shouldn't apply for the reason that I just mentioned the policy is generally applicable to anyone regardless of whether or not they are have a five o'clock shadow for religious beliefs or for any other beliefs it's absolutely generally and every single person would be subject to that evaluation as to whether or not the five o'clock shadow interferes with that mask at that point in time if it interferes with that mask any person would be sent home so the plaintiff in this case as well would be able to treat it exactly the same in that discussion and so it is different than the mandatory you can't have longer than a five o'clock shadow rule that ACFD follows and that's also it's not there's no exceptions to that rule there's never been an exception for a medical exemption and we have an example of that as well where someone who requested it for a medical exemption was also denied but does it does it matter that they were denied as long as they could have been as long as they could have been not denied no no because it's a general applicability every single person would have been denied for any reason so it doesn't matter if it was religious or medical discretion on an emergency call back they have discretionary emergency call back that the treatment is the same there's no between religion and any other secular reason or non-religious reason for that discretion of a supervisor though right absolutely and discretion there's a lot of discretion for on the part of an employer doesn't mean that it's discriminatory it would violate the Equal Protection Clause or would be subject to strict scrutiny just because there's discretion on a neutral law and a neutral applicability okay I'm just trying to get a sense of the conduct of ACFD's particular business and there there's a lot of testimony in the record and the only person I saw you know talk about the order of operations to the extent where mr. Smith could be called back or could be asked to suppress fire and he testified that it was second and third the company that's there then the third do companies reserve apparatus or RIV or something like that emergency callback and then mutual aid from surrounding towns is that accurate correct we wouldn't go to mutual aid to surrounding towns until all of the personnel that was needed in that order could respond and does mutual aid cost ACFD anything I don't believe so but it isn't something that it because of the mutual aid agreements the agreements that the two that the townships have for mutual aid agreement always have a provision where you have to use your own people first it's an emergency situation where you don't have enough personnel where you have to call in other people to and the storm the storm 2020 the tropical storm when mr. Smith was activated do you are you aware of whether or not mutual aid was activated once he did not respond or if there was any call for mutual aid or if it was available unavailable if that's in the record there was not because and what we had was we had the other air mask technician take his place who did the air matic air mask technician work during that storm I'm sorry who did the air mask technician work during that 2020 incident I'm not sure what functions he would have performed no who did it oh the other there's only two air messages who filled that role it's a primary role to fill tanks but the secondary role is of course to rescue people and to perform whatever functions need to be done at that time so there's two of them and the other one I the name is escaping me but it is in the record did you say the that the other one was called to fight the fire correct okay who did the air mask technician work who was the one who was the one that was not fighting there wasn't anyone there would be that situation didn't need that it wasn't a fire situation it was a storm situation so all with a lot of downed trees electrical wires things of that nature there was no tanks necessarily needed so why was a mask necessary in that in situation where there was no fire there wasn't well in case there was any type of situation where a mask would be needed but no a mask probably what were the what was the what were the facts that would have required one to wear I don't believe that there would have been any any requirement to wear a mask in that situation but mr. mr. Smith refused to appear nonetheless for whatever reason he did and we have to be in terms of the retaliation claim here with him not appearing it may very well have been that he didn't need to wear a mask to perform those services but in terms of retaliation claim if there's a claim for retaliation based on that incident and based on subsequent incidents it was incumbent on mr. Smith to amend the complaint and the complaint here was never amended with an illegal theory and we know that we can't raise legal theories of liability in a opposition brief to some of judges let's just assume for a minute that we do use strict scrutiny can the city win under strict scrutiny absolutely I believe so because of the federal regulations we can't violate those and so therefore we need to follow those regulations for all personnel thank you well before you go your adversary made a big point about accommodations okay and they said you had a duty to accommodate is your position it's a hard stop we can't accommodate you and that's it I believe that based on the fact that we can't question someone's sincere belief and the only options that were presented our alternatives that were presented was for us to request mr. Smith to compromise those are sincere beliefs that is not reasonable accommodation whatsoever under title 7 under the Equal Protection Clause under the First Amendment we cannot question those so if his if his request had been my religious obligation is to have facial hair no description of length then you agree it would have been incumbent upon a CFD to explore what lengths of facial hair yes interfered with the seal I would say yes I would say that there it was there had to be a conversation my understanding is that there was that representation that it had to be a three-inch beard he's even asserted that and confirmed that that was the request in the complaint as well as in his affidavit in support of the preliminary injunction okay thank you thank you your honors a few quick points to pick up where my colleague left off on page 173 of the record is mr. Smith's original accommodation request and he says I'm sending this information to request an accommodation to continue to wear my beard due to my religious beliefs and convictions there's no mention of the link and under graph the burden is on the department to have an interactive process with mr. Smith and to discuss alternative accommodations and they never did to the point of cost your honors the department has not met its burden to show substantial increased costs as judge Porter alluded to the cost during an emergency would be potentially when that situation arose if in the rare event that an air mass technician was needed to engage in suppression which has happened potentially once in 37 years another disputed fact it would be the cost of sending in someone else which could happen in a large department or it could be the cost of potentially allowing him to go ahead and wear that SCBA mask with a quarter-inch beard which there is testimony in the record at page 289 which shows that you can pass a fit test with up to a quarter inch beard that evidence was him fit testing himself I believe correct but he also fit tested a colleague with a quarter-inch growth and in Potter the DC Circuit found that SCBA masks can safely be worn with beards in fact the DC Department conceded that back in 2007 and ever since 2007 DC firefighters have been wearing religious and medical beards and fighting fires the inspra is that the same inspra model yes your honor the SCBA basket issue there was the same the issue in Potter was they also wanted to negative pressure mask which is more dangerous there is actually some risk with that mask with facial hair but the department conceded that the positive pressure mask which is the only kind of mass that Atlantic City has ever used can be safely worn with facial hair and I would point your honors to the amicus brief from the Potter plaintiffs where they explained in this case how they safely fought fires for decades with their facial hair under a religious on accommodation the city says it was impossible for us to accommodate because of the state and federal regulations one can you address the adequacy of that as a legal matter and two if you if there if what what accommodations do you say they could have made first your honor the regulations do not apply to mr. Smith because the way that the regulations specifically define the role of firefighter is someone who quote engages in the physical activity of rescue fire suppression or both this is someone who works inside the hot zone as part of their fire suppression duties and mr. Smith's role at the scene of a fire as we discussed is specifically to stay can you can you address judge Porter's question about yes your honor if it applies there are other ways to comply with the regulations the regulations themselves are written letters from OSHA in the record one from 2003 and two from 2011 and they all allude to alternatives for example from August 2011 at page 76 quote there are loose fitting respirators available that can be used effectively by bearded workers in the majority of situations where respirators are required and then in 2003 they said there are positive pressure respirators of the hood and helmet type where facial hair and beards will have less effect on the fit I will mention what about the fact that Pioche is the one that is regulating ACFD and Pioche specifically told them that there was no accommodation so just address whether or not as a legal matter that in and of itself isn't could be an undue burden if not what else would be needed to show it's an undue burden your honor Pioche's email at page 190 that was from Patrick Bost who's a Pioche health official that was only in reference to traditional firefighters who fight inside the hot zone it was not in reference to administrative roles like Air Mass Technicians but even if the regulations did apply here it would not be an undue hardship preventing an accommodation for Mr. Smith because Title 7 does override to the extent there is a conflict which we believe there's not because there's these other ways of complying and the regulations don't apply to him even if Title 7 does have an express provision at 2000 E-7 that says it overrides state laws which quote require or permit an unlawful employment practice under this chapter and I will also point your honors to three comparator cases about the exact same beard issue where the same regulations were in play we have Potter where the same regulations apply in the DC context and they've never had a problem with accommodating those religious beards and they've not been sanctioned in any way by OSHA because again it's not a violation we have the California Department of Corrections case which is post gruff and in this situation it was the prison context which obviously security and safety is top of mind there and prisons also receive a lot of deference typically from courts but the court there said that the California OSHA regulations were not an excuse for failing to accommodate because the frequency of actually needing to wear a respirator for those employees was so rare and that's comparable to Mr. Smith here it's so rare that he would actually need to wear a respirator and then the third case is Sugrim this is from the Southern District of New York and in this case the same OSHA regs were at issue but the court found that the department's other practices undermined its purported interest in following those regulations and I will say here the department has not consistently fit tested its other administrative employees and it's also not trained them and it was it was actually sanctioned by PIOSH for not training its administrative employees. I wanted to follow up on a question I asked earlier what sort of accommodations does Mr. Smith say the city should have considered? I think the quarter-inch beard is a great one because that's what the Potter plaintiffs have worn they've also worn longer but that is one accommodation that has been clearly shown to be safe with a positive pressure mask. Another accommodation would be for him to wear a full beard but to trim it to a fit test length in the rare event that he's needed to engage in power suppression. Another accommodation would be to call in someone else in the rare event that he's needed to engage in power suppression and the department's burden under GROF is to quantify the cost of those potential alternative accommodations. It's not the cost of the worst-case scenario or the cost of an emergency they have to drill down and be very specific and the Fifth Circuit in the Hebrew versus Texas Department of Corrections case made this very clear there was a similar concern there about an employee needing to wear a gas mask and wanting a religious beard accommodation and the court found that the government failed to quantify any actual cost that would result and just pointing broadly to safety concerns in that situation was not enough. They had to show specific costs that would result from accommodating that particular employee. That was a 2023 case, right? Correct, it was applying GROF. Can I just ask you is there anything in the record at all showing that Atlantic City targeted religion intentionally? Your Honor, when Mr. Smith originally made his accommodation request, HR required him to file a complaint and to show experts and witnesses in support of his request, which is a higher burden than employees are required to show when they request an accommodation, but targeting is actually not necessary under the Free Exercise Clause. A law could be facially neutral but still enforced in a non-neutral way under lukumia and tenafy. That's what we see here and then it could also be not generally applicable and that's also what we see here. So there may have been some targeting but that's not necessary for this court's Free Exercise Decision. All right, thank you counsel. We will take this case under advisement and thank counsel for their excellent briefing in this case and argument and if you're amenable we'd like to greet you sidebars as well like the last case.